[Civ. No. 1931. Second Appellate District.—June 22, 1917.]

FARMERS' WAREHOUSE COMPANY (a Corporation), Respondent, v. PIERCE–INGRAM–ABBOTT COMPANY (a Corporation), Appellant.

SALE OF HAY—QUALITY—ABSENCE OF ESTOPPEL.—A provision in a written contract for the sale of a lot of baled hay that the hay shall be of the same lot as that inspected by the agent of the purchaser serves merely to identify the hay, and is not to be taken as an admission that the purchaser had inspected all the hay sold, so as to estop it from raising any question as to its quality.

APPEAL from a judgment of the Superior Court of Los Angeles County. Sidney N. Reeve, Judge.

The facts are stated in the opinion of the court.

Hanson, Hackler & Heath, for Appellant.

Loeb, Walker & Loeb, for Respondent.

JAMES, J.—Plaintiff sued to recover upon a written contract for the sale of a lot of baled hay. Judgment was in its favor, from which judgment this appeal is taken.

On October 31, 1913, the following agreement was made between the parties hereto:

"This Agreement, made this 31 day of Oct., 1913, by and between PIERCE-INGRAM-ABBOTT Co., a corporation of the city of Los Angeles, party of the first part, and the FARMERS' WAREHOUSE Co., party of the second part,

WITNESSETH: That the party of the first part agrees to buy, and the part — of the second part agree — to sell approximately 50 tons of first-class oat hay, at $17.50 per ton, and ——— tons of first class ——— hay at $——— per ton, all f. o. b. cars in the field at Santa Barbara and Western Aves. station, payment to be made for said hay by said party of the first part as follows: $250.00 cash, receipt of which is hereby acknowledged by said party of the second part, and the balance Nov. 10, 1913. Settlement to be made according to Trans. Con. Trf Bu on Hardestys scales weights at Los Angeles.

"All cars to be loaded to capacity required by railroad company. Said hay shall be well baled, sound and of good merchantable quality, and of the same lot as that inspected Mr. Pierce and now located at Santa Barbara Western Ave. and is at risk of said party of the second part as to damage by fire or water until hay is delivered f. o. b. cars for said party of the first part.

"Said hay shall be shipped discretion of party of first part and if not shipped as herein stated first party shall have the right to cancel this agreement. If hay shipped is not first class quality, first party shall report same to second party as soon as possible, and unless otherwise ordered may sell said hay for the account of said second party."

The evidence showed that at the time in question plaintiff was the owner of a stack of baled hay located in a field. Plaintiff by one of its agents made inquiry of defendant as to whether defendant would purchase the hay, and after some negotiation a price was agreed upon and the writing above set forth executed. In the afternoon of the same day, after inspecting the stack of hay, the defendant stopped payment on the check for $250 delivered by it at the time of the signing of the contract, and refused to accept the hay for the alleged reason that it was third-class hay and not such hay as the contract provided should be delivered to it. Plaintiff insisted that the sale had been completed, and brought this suit to recover the purchase price. It will be noted that the contract recited, first, that the hay subject to the sale was "first-class oat hay"; again, that "said hay shall be well baled, sound, and of good merchantable quality, and of the same lot as that inspected by Mr. Pierce . . . " It appeared first in evidence that prior to entering into the written contract or agreement for sale, and prior to any negotiations being had with the plaintiff, two of the officers of the defendant had inspected a single bale of hay located at some distance from the main stack. This bale was said by one of these witnesses to be "second quality hay." A witness for the plaintiff testified that when the negotiations with defendant were taken up looking to sale being made of the hay in question, defendant's officer was asked if he had seen the hay and he replied "yes." Testimony was offered by competent witnesses to show that the hay was found to be "third class," and to establish the value of it at the date of making the contract. All of this

evidence was refused by the trial judge, who stated that the contract itself showed that the hay had been inspected, and, therefore, the defendant was estopped from raising any question thereafter as to its quality. One of defendant's officers testified that when he negotiated for the hay it was understood that he was to visit the stack, which he had not theretofore examined, in the afternoon of the same day upon which the contract was signed, and that if the hay was of satisfactory quality, the deal would be completed; otherwise not. This preliminary showing of the situation as to the hay and the conditions under which the contract was made was competent, although we agree, as the trial judge concluded, that the obligations of the parties in the main were governed by the terms of the writing which was entered into deliberately at the end of the negotiations. We cannot agree, however, with the conclusion of the lower court that the writing showed that *all* of the hay had been inspected at the time the writing was made. As to the matter of inspection, the contract only recited that the hay should be "of the same lot as that inspected by Mr. Pierce," which serves no more than to identify the hay and does not amount to an admission that defendant had inspected *all* of the hay. Under the terms of the contract the hay was required at least to be "sound and of good merchantable quality." The evidence tendered by the defendant would have been material as showing whether or not this condition of the agreement was satisfied. If the parties were making a sale of hay already examined by the defendant, then it must have been that the defendant knew fully the character of the hay bargained for, and there would have been no purpose at all of inserting the terms declaring what the condition of the hay should be and defining its quality. For error in refusing to receive the testimony offered by the defendant for the purpose of proving the quality of the hay, we think a new trial should be had.

The judgment is reversed.

Conrey, P. J., and Works, J., *pro tem.*, concurred.